UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALEXIS PATRICIO BRITO BRITO,          )
                                      )
                Petitioner,           )
                                      )
        v.                            )   Case No. 2:26-cv-104
                                      )
PATRICIA HYDE, ACTING DIRECTOR OF     )
BOSTON FIELD OFFICE, U.S.             )
IMMIGRATION AND CUSTOMS               )
ENFORCEMENT, ENFORCEMENT; TODD M.     )
LYONS, ACTING DIRECTOR, U.S.          )
IMMIGRATION AND CUSTOMS               )
ENFORCEMENT; MARKWAYNE MULLIN,        )
SECRETARY OF THE U.S. DEPARTMENT      )
OF HOMELAND SECURITY; AND WILLIAM     )
LAMON, SUPERVISOR IN CHARGE OF        )
CBP BEECHER FALLS STATION,            )
                                      )
                Respondents.          )

**OPINION AND ORDER**

Before the Court is Petitioner Alexis Patricio Brito Brito's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. He seeks relief including "an Order that Defendants not remove Petitioner from the State of Vermont;" that the Court "Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment as well as the relevant statute and regulations governing detention of noncitizens;" and that the Court "Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately[.]" ECF No. 1 at 9. The Federal Respondents contend that Petitioner's

petition must be dismissed for lack of habeas jurisdiction because it incorrectly names Petitioner's immediate custodian. Aside from this legal defect, the Federal Respondents submit an abbreviated response to the petition and have informed the Court that "the core questions of law in this case, and the challenges to the government's policy and practice, substantially overlap with those at issue in other cases this Court has decided," and thus, while "preserving all rights," the Federal Respondents incorporate by reference the legal arguments they presented in previous cases and acknowledge that: "[s]hould the Court apply the same reasoning it did in those cases to this one, the legal principles espoused would likely result in the Court reaching the same conclusion here."  ECF No. 6 at 5.

The Court held a status conference on April 2, 2026.  At the status conference, the parties discussed the immediate custodian issue and Petitioner's attorney stated that he would seek *pro hac* admission.

On April 9th, counsel for Petitioner moved to appear *pro hac vice* and the Court granted the motion.  ECF Nos. 10, 11. The next day, Petitioner moved to amend his petition.  ECF No. 14.  The Court GRANTS this motion, as discussed at the hearing on April 16th, 2026, and DENIES the Federal Respondents' motion to dismiss the case as moot now that the jurisdictional defect has been remedied.

## I.   <u>Factual Background</u>

In his Petition, Petitioner states that he is a twenty-year-old Ecuadorian citizen who is "eligible for Asylum and or Withholding of Removal."  ECF No. 1 at 2; *see also* ECF No. 14-1. He states that he "has been a resident of Milford-MA since 2022, is a working class member and is beloved by his community."  *Id.* According to his Petition, he "entered the United States without inspection through the southern border in May of 2022 and was never countered by Border Patrol."  *Id.* at 3.

Petitioner states that he was "at liberty in the United States for almost four years prior to his detention."  *Id.*  He says he "has no criminal background."  *Id.*

Petitioner states that on March 25, 2026, he was "detained while working by CBP Officers during a raid at his worksite." *Id.*  According to the Federal Respondents, this happened in northern New Hampshire.  ECF No. 6 at 5-6.  Petitioner originally stated that he remained detained at the Beecher Falls Station in Canaan, Vermont.  ECF No. 1 at 3.  Federal Respondents state that Petitioner was processed at the Beecher Falls Border Patrol Station in Canaan, Vermont, then transferred to Immigration and Customs Enforcement ("ICE") custody and booked into Northwest State Correctional Facility the next day, where he remains.  ECF No. 6 at 3.

Along with his Amended Petition, Petitioner submitted a copy of his birth certificate (ECF No. 14-4) and an affidavit from his mother, in which she described being solely responsible for Petitioner's care as a teenage mother and a father who "completely abandoned" Petitioner (ECF No. 14-5).

At the hearing on April 16th, 2026, the Court heard from Petitioner.  Petitioner came to the United States by himself in 2022, when he was 16 years old.  His mother was already in the United States.  He went to some middle school and high school in Milford, Massachusetts, and graduated from high school.  He lived with his mother, girlfriend, and two younger brothers in Milford, Massachusetts before he was detained and he said that, if released, he would return to live with them again.  He also has aunts and uncles who live in the Milford area.  He has never been convicted to any crimes, and has no criminal record.  He works for a construction company (that does siding) based out of Milford Massachusetts, has worked for the company for two years, and would return to work for the company if released.

Petitioner was detained when he was in a car on the way to a worksite, and he and his fellow passengers were trying to find breakfast when Border Patrol pulled over the car and passengers. He was nervous at the time and was not exactly sure what was said by Border Patrol officers.  Multiple people were detained by Border Patrol.

4

Petitioner's counsel also explained that Petitioner must file for "immigratory relief as a Special Immigrant Juvenile, by filing the Form I-360 with the USCIS" by July.  *See* ECF No. 17.

The Federal Respondents informed the Court at the April 16th hearing that they had no evidence to present as to Petitioner's flight risk or risk of dangerousness.

## II.  Jurisdiction and Legal Standard

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, 28 U.S.C. § 2241(c)(3); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).[1]

## III. Discussion

Petitioner requests that this Court issue "an Order that Defendants not remove Petitioner from the State of Vermont;" that the Court "[d]eclare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment as well as the

---

[1] In this case, Respondents do not argue that Petitioner failed to exhaust his administrative remedies.  Other district courts have addressed, and excused, exhaustion in similar circumstances. *See, e.g., Lopez Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, *37-41 (S.D.N.Y. Aug. 13, 2025).

relevant statute and regulations governing detention of noncitizens;" and that the Court "Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately[.]" ECF No. 1 at 9. The Federal Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that his petition lacks merit and should be denied. ECF Nos. 6, 7. As noted above, the Federal Respondents submit an abbreviated response to the petition and have informed the Court that "the core questions of law in this case, and the challenges to the government's policy and practice, substantially overlap with those at issue in other cases this Court has decided," and thus, while "preserving all rights," the Federal Respondents incorporate by reference the legal arguments they presented in previous cases and acknowledge that: "[s]hould the Court apply the same reasoning it did in those cases to this one, the legal principles espoused would likely result in the Court reaching the same conclusion here." ECF No. 6 at 5.

Accordingly, the Court adopts the same analysis (regarding the Federal Respondents' practice of detaining noncitizens without a bond hearing under 8 U.S.C. § 1225(b)(2) rather than 8 U.S.C. § 1226(a)) in this case as in its previous cases, and incorporates the analysis from those cases herein. *See Reynoso De Luis v. Trump, et al.*, No. 25-cv-921, 2025 WL 3763397, 2025 U.S. Dist. LEXIS 267391, at *2 (D. Vt. Dec. 30, 2025); *see also*

6

*Acosta Yupangui v. Hale, et al.*, No. 25-cv-884, 2025 WL 3207070, 2025 U.S. Dist. LEXIS 225459 (D. Vt. Nov. 17, 2025); Opinion and Order, *Piedrahita-Sanchez v. Turek, et al.,* No. 25-cv-875 (D. Vt. Nov. 14, 2025) (ECF No. 13); Opinion and Order, *Castro Guaman v. Trump, et al.,* No. 26-cv-73 (D. Vt. Mar. 20, 2026) (ECF No. 10); *Jerez Andrade v. Trump*, No. 2:26-cv-69, 2026 WL 755018, 2026 U.S. Dist. LEXIS 55130 (D. Vt. Mar. 17, 2026). This means that the Court finds that Petitioner was unlawfully detained under 8 U.S.C. § 1225(b)(2) rather than 8 U.S.C. § 1226(a), and that his due process rights were violated. The Court does not reach the remaining issues raised in the habeas petition.

## IV.   Remedy

Generally, writs of habeas corpus are used to request release from custody. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). A habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779-80 (2008) (noting that at "common-law habeas corpus was, above all, an adaptable remedy."). When faced with similar habeas petitions, this Court has, in some cases, previously ordered a bond hearing or, alternatively, immediate release. *See, e.g., Reynoso De Luis v. Trump, et al.*, No. 25-

7

CV-921, 2025 WL 3763397, at *2 (D. Vt. Dec. 30, 2025); *Acosta Yupangui v. Hale, et al.*, No. 25-CV-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); Opinion and Order, *Piedrahita-Sanchez v. Turek, et al.*, No. 25-CV-875 (D. Vt. Nov. 14, 2025) (ECF Doc. No. 13).

The Court notes that, as the Federal Respondents acknowledged in their pleadings and as the Petitioner asserts in his petition, some other district courts have simply ordered immediate release. *See, e.g.,* Order*, Lopez-Niz v. Hale, et al.,* No. 25-CV-912 (D. Vt. Dec. 30, 2025); *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *44 (E.D.N.Y. Oct. 6, 2025) ("Hyppolite's Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED. At the hearing on September 29, 2025, the Court ordered Respondents to immediately release Hyppolite from custody, and was later informed by Respondents' counsel that he was released that same day."); *Gonzalez v. Joyce*, No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) (habeas petition granted and respondents ordered to immediately release petitioner from custody and certify compliance with a filing the next day); *Benitez v. Francis*, No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *J.U. v. Maldonado*, No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *31 (E.D.N.Y. Sept. 29, 2025)

8

("Respondent is ORDERED to immediately release Petitioner from custody.").

Here, the Federal Respondents ask the Court to, if it follows its previous cases, order the same relief it ordered in *Piedrahita-Sanchez*: a bond hearing.  ECF No. 6 at 2. Petitioner, on the other hand, requests release.  For the reasons set forth above, the Court orders that Petitioner is entitled to a bond hearing.  Again, numerous other courts have fashioned similar relief.

With that said, the Court takes into account the evidence it heard at the April 16, 2026 hearing.  This evidence concerned, first, the nature of the Petitioner's detention: he was stopped by Border Patrol, with others, on his way to a worksite.  There was no apparent change in the Petitioner's circumstances that led to the Federal Respondents' decision to detain Petitioner.  Additionally, the Court heard evidence that the Petitioner was not a flight risk and was not a danger to his community.  Petitioner is very young, and came to the United States as a child.  He has lived in Milford, Massachusetts since arriving, and currently lives with his mother, girlfriend, and two younger brothers.  He has significant ties to the Milford area, including having gone to school there and having his current job there (which he has stated he can return to). Moreover, Petitioner has every incentive to complete the filings

9

discussed by his attorney.  Petitioner has no criminal convictions.  The Court is confident that he does not pose a risk of flight or danger to the community.  He is hardworking and appears to be a very responsible, young individual.  This justifies the Court's finding that the Petitioner's situation is one of extraordinary circumstances.  The Federal Respondents did not put on any evidence to the contrary.

The Court finds that Petitioner's considerations are "extraordinary circumstances" that make immediate release "necessary to make the habeas remedy effective."  *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001).[2]

---

[2] *Mapp* concerned the standards for granting bail (even in cases challenging detention by the Immigration and Naturalization Service) pending a final decision on a habeas petition.  Here, the Court is in the position of deciding the habeas petition upon its merits—and having already rejected the Federal Respondents' legal position in other cases—but also, having fashioned relief particular to the circumstances of this case (ordering a bond hearing), has the chance to address Petitioner's circumstances in the meantime.  The Court thus finds that Petitioner has substantial claims for relief—the Court rules in favor of Petitioner on the Section 1225 issue, and has already decided multiple cases on this basis.  *See Mapp*, 241 F.3d at 230 (a court "considering a habeas petitioner's fitness for bail must inquire into whether the habeas petition raises substantial claims and whether extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." (cleaned up)).  The Court also finds that extraordinary circumstances exist, as set forth above.  Thus, although the Court is not formally granting bail and is rather fashioning a relief tailored to the circumstances of this case, it follows the reasoning of *Mapp.*

Thus, the Court orders that the Petitioner be immediately released pending the bond hearing (should the Federal Respondents choose to hold a bond hearing at all).  This approach has been taken by other district courts when confronted with similar situations.  *See, e.g., Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 U.S. Dist. LEXIS 210971, 2025 WL 3004437, at *5 (D.R.I. Oct. 27, 2025) (granting habeas petition and stating: "The Government is ORDERED to provide him with a bond hearing before an IJ pursuant to 8 U.S.C. 1226(a) within ten days of the date of this order.  Further, the Court ORDERS the Government to release Mr. Tomas Elias immediately pending the bond hearing.  The Government shall set minimal release conditions that will reasonably assure Mr. Tomas Elias's appearance at the bond hearing."); *Orellana v. Noem*, 807 F. Supp. 3d 745, 755 (W.D. Ky. 2025) ("The United States is directed to release Petitioner Orellana from custody and provide her with a bond hearing before a neutral Immigration Judge…").

Accordingly, the Court ORDERS that the Petitioner be immediately released.  The Court is also ordering a bond hearing at the Federal Respondents' discretion.

### V. Conclusion

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus is GRANTED in part.  The Federal Respondents are ORDERED that Petitioner is entitled to a bond hearing, and

11

that, if they so choose, they may hold an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) for Petitioner.  Should immigration authorities seek a bond hearing in this case, Petitioner must comply with any associated reporting requirements.  Pending that hearing, should it occur, the Court ORDERS that the Petitioner be immediately released.  In other words, the hearing is discretionary, but the release in the meantime is not.

Because the Court is ordering that Petitioner be immediately released pending his bond hearing, the Court dissolves its previously entered TRO.  ECF Nos. 2, 12.

Additionally, the Court GRANTS Petitioner's motion to amend his petition (ECF No. 14)and DENIES the Federal Respondents' motion to dismiss the case (ECF No. 7) as moot.

Dated at Burlington, in the District of Vermont, this 16th day of April 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
United States District Court